**Kevin Michael SHEA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–03–00180–CR.**

Court of Appeals of Texas,
Waco.

April 20, 2005.

Rehearing Overruled June 14, 2005.

R. David Holmes, The Holmes Law Firm, Hillsboro, for appellant.

Walter M. Reaves, West, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Kevin Michael Shea of indecency with a child. The jury found enhancement allegations "true" and assessed his punishment at ninety-nine years' imprisonment. Shea contends in six issues that the court erred by: (1) denying his motion to dismiss premised on speedy trial grounds; (2) failing to promptly provide a limiting instruction when evidence of extraneous offenses was admitted; (3) admitting e-mails purportedly from Shea to the complainant because their authentic-

ity was not established; (4) refusing to charge the jury on misdemeanor assault as a lesser-included offense; (5) overruling an objection to the State's comment during punishment argument about Shea's absence from the proceedings; and (6) appointing an attorney pro tem who was serving a federal probation at the time of trial. We will affirm.

### The Attorney Pro Tem Was "Competent" To Represent The State

■ Shea contends in his sixth issue that the court abused its discretion by appointing as attorney pro tem an attorney who was serving a federal probation for misprision of a felony at the time of trial. Because Shea presented no evidence that the attorney pro tem's license had been suspended or that he was not otherwise a "member in good standing" of the State Bar, we hold that no abuse of discretion is shown.

Article 2.07(a) of the Code of Criminal Procedure provides:

> Whenever an attorney for the state is disqualified to act in any case or proceeding, is absent from the county or district, or is otherwise unable to perform the duties of his office, or in any instance where there is no attorney for the state, the judge of the court in which he represents the state may appoint any competent attorney to perform the duties of the office during the absence or disqualification of the attorney for the state.

TEX.CODE CRIM. PROC. ANN. art. 2.07(a) (Vernon 2005).

■ When the appointment of an attorney pro tem is necessary under article 2.07, the decision of whom to appoint lies within the discretion of the trial court. *See Loshe v. State,* 160 Tex.Crim. 561, 272 S.W.2d 517, 520 (1954); *Davis v. State,* 840 S.W.2d 480, 487 (Tex.App.-Tyler 1992, pet. ref'd); *State ex rel. Sherrod v. Carey,* 790 S.W.2d 705, 709 (Tex.App.-Amarillo 1990, orig. proceeding). The only limitation imposed by the statute is that the court appoint a "competent attorney" to serve. TEX.CODE CRIM. PROC. ANN. art. 2.07(a). However, the statute does not define that term.

■ We begin with the language of the statute. *Sanchez v. State,* 138 S.W.3d 324, 325 (Tex.Crim.App.2004). We may use a dictionary to assist in this endeavor. *See id.* at 325–26; *Searcy v. State,* 115 S.W.3d 628, 631 (Tex.App.-Waco 2003, no pet.). *Webster's* defines the term "competent" to mean "legally qualified or adequate." *Merriam–Webster' s Collegiate Dictionary* 234–35 (10th ed.1993).

Section 81.102 of the State Bar Act provides that only members of the State Bar may practice law in this state, with some exceptions not applicable here. *See* TEX. GOV'T CODE ANN. § 81.102 (Vernon 2005). The State Bar Rules define a "member in good standing" as "a member of the State Bar who is not in default in payment of dues and who is not under suspension from practice." TEX. STATE BAR R. art. I(6), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app (Vernon 2005).

According to the State Bar Rules, a member may practice law if he or she is not in default of payment of membership fees or other authorized assessments and if he or she has complied with the minimum continuing education requirements of the State Bar Rules. *See* TEX. STATE BAR R. art. III, §§ 5, 8, art. XII, § 8.

Shea does not contend that the attorney pro tem had failed to comply with these requirements. Rather, Shea contends that the attorney was disqualified because of his federal probation for misprision of a felony. However, Shea presented no evi-

dence to the trial court regarding the status of the attorney pro tem's membership with the State Bar. He argued only that the attorney should not be allowed to prosecute the case because he was on federal probation.

Because Shea presented no evidence that the attorney pro tem's license had been suspended or that he was not otherwise a "member in good standing" of the State Bar, we cannot say that the court abused its discretion by overruling Shea's objection to the appointment of the attorney pro tem in his case. Thus, we overrule his sixth issue.

### Shea Was Not Denied His Right To A Speedy Trial

■ Shea contends in his first issue that he was denied his constitutional right to a speedy trial. Because Shea did not assert his speedy trial in a timely fashion and has not shown that his defense was prejudiced by the delay, we will overrule this issue.

■ We balance four non-exclusive factors when considering a speedy trial claim: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness of the defendant's assertion of his right to a speedy trial; and (4) any prejudice to the defendant caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Shaw v. State*, 117 S.W.3d 883, 888–89 (Tex.Crim. App.2003).

■ The Supreme Court has described the first factor as "a triggering mechanism" for consideration of the remaining factors. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Shaw*, 117 S.W.3d at 889. The

State concedes that the 42–month[1] delay in Shea's case is presumptively prejudicial. Accordingly, we consider the remaining factors.

Shea's trial was delayed for several reasons. He was arrested on the charge in December 1998 and released on bond the same day. The indictment was presented in February 1999. Shea filed continuance motions which were granted in May 1999 and November 1999. The court's docket sheet indicates that the matter was called on a monthly basis beginning in March 1999 and that the first time Shea announced "ready" for trial was February 2000. From April 2000 until the trial in June 2002, Shea's case was passed on six occasions because other (presumably older) cases were heard.

■ During the hearing on Shea's speedy trial claim, the State cited an overcrowded docket and Shea's continuance motions in this and a companion case as reasons for the delay. These are the same factors recited by the prosecution in *Shaw*. 117 S.W.3d at 889. And as the Court of Criminal Appeals concluded in that case, we too conclude that Shea's continuances account for only "several months" of the 42–month delay. *Id.* Conversely, "a crowded court docket is not a valid reason for delay." *Id.* at 890. Thus, this factor "weighs in favor of finding a violation of appellant's right to a speedy trial." *Id.*

Shea made his first and only speedy trial claim on the day of trial. "In view of the lengthy delay here, during most of which appellant quietly acquiesced, this factor weighs very heavily against finding a violation of his right to a speedy trial." *Id.*

---

1. The State characterizes the delay as only 40 months, beginning with the date of the indictment. However, the initial date for speedy trial purposes is the date of arrest or indictment, whichever occurs first. *See Shaw v.* *State*, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003). Thus, we measure the length of the delay from the time of Shea's arrest, which was 2 months before the indictment was presented.

The right to a speedy trial was designed: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the defendant; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *Shaw*, 117 S.W.3d at 890. Of these, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Shea concedes that the issue of oppressive pretrial incarceration does not apply because he was on bond before trial. He notes that his motion to dismiss on speedy trial grounds alleges that the delay has caused him "undue anxiety, concern, and is oppressive to [him]." However, Shea presented no evidence at the hearing on the motion to support this assertion. *Cf. Shaw*, 117 S.W.3d at 890 ("appellant offered no evidence to the trial court that the delay had caused him any unusual anxiety or concern, *i.e.*, any anxiety or concern beyond the level normally associated with being charged with a felony sexual crime").

Thus, Shea focuses on the third interest that the right to a speedy trial was designed to protect—limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *Shaw*, 117 S.W.3d at 890. Shea contends that his defense was impaired by the delay because his step-daughter had moved to another state at the time of trial and was unavailable to testify. At the speedy trial hearing, Shea offered no evidence of what the content of his step-daughter's testimony would be, but he contends in his brief, "Any reasonable person would conclude that [her] testimony would have been extremely helpful to the trier of fact in determining guilt or innocence in this case."

■ To establish prejudice because of an unavailable witness, a defendant must show that "the witness[ ][is] unavailable, that [her] testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find [her] and produce [her] for trial." *Meyer v. State*, 27 S.W.3d 644, 650 (Tex.App.-Waco 2000, pet. ref'd) (quoting *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App. 1973)); *accord Ervin v. State*, 125 S.W.3d 542, 548 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Shea's unsubstantiated assertion that his step-daughter's testimony "would have been extremely helpful" does not satisfy this test. *See Harris*, 489 S.W.2d at 308–09; *Ervin*, 125 S.W.3d at 548–549; *Meyer*, 27 S.W.3d at 650. Accordingly, this factor weighs against a finding of a speedy trial violation.

The 42–month delay and the reasons for the delay weigh in favor of a finding that Shea's right to a speedy trial was denied. Conversely, Shea's delay in asserting his right to a speedy trial and the lack of evidence that he was prejudiced by the delay weigh against such a finding. Under these circumstances, we cannot say that Shea' right to a speedy trial was violated by the delay. Accordingly, we overrule Shea's first issue.

**The Trial Court Did Not Abuse Its Discretion By Failing To Give A Limiting Instruction Because The Acts Which The Parties Consider To Be "Extraneous" Were Not So Under The Indictment**

■ Shea contends in his second issue that the court abused its discretion by failing to provide a limiting instruction when the State offered evidence of what the parties consider to be extraneous offenses.[2] However, because each of the

---

**2.** The fact that the prosecutor agreed with

Shea's characterization of the acts in question

purported "extraneous" acts could have been prosecuted under the indictment, they were not extraneous, and no limiting instruction was required.

■■■■ "An extraneous offense is defined as any act of misconduct, whether resulting in prosecution or not, that is *not shown in the charging papers.*" *Rankin v. State,* 953 S.W.2d 740, 741 (Tex.Crim. App.1996); *Brown v. State,* 6 S.W.3d 571, 575 n. 2 (Tex.App.-Tyler 1999, pet. ref'd); *accord Rodriguez v. State,* 104 S.W.3d 87, 91 (Tex.Crim.App.2003). "[T]he 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App.1997); *accord Rodriguez,* 104 S.W.3d at 91.

Here, the indictment alleges that Shea committed the offense of indecency with a child "on or about" June 10, 1998, "by touching the genitals and/or breast" of the complainant. The "extraneous" acts in question were two prior occasions when Shea touched the complainant's breast, both of which occurred in 1996.

The statute of limitations for indecency with a child runs for ten years after the child's 18th birthday. *See* Tex.Code Crim. Proc. Ann. art. 12.01(5)(A) (Vernon 2005). Both of the supposed "extraneous" acts occurred before the presentment of Shea's indictment and within the statutory limitations period. Therefore, they are not "extraneous" offenses.[3] *See Rodriguez,* 104 S.W.3d at 91; *Sledge,* 953 S.W.2d at 255–56; *Rankin,* 953 S.W.2d at 741; *Brown,* 6

S.W.3d at 575–76. Accordingly, no limiting instruction was required when the evidence was admitted. Thus, we overrule Shea's second issue.

## The Complainant Adequately Authenticated Shea's E-mail Communications

Shea contends in his third issue that the court abused its discretion by admitting printed copies of a series of e-mail communications purportedly from Shea to the complainant because the e-mails were not properly authenticated.

■■■■ We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim.App.2004). The issue of authentication "arises whenever the relevancy of any evidence depends upon its identity, source, or connection with a particular person, place, thing, or event." *Kephart v. State,* 875 S.W.2d 319, 321 (Tex.Crim.App.1994) (per curiam) (quoting 2 Steven Goode et al., Guide to the Texas Rules of Evidence § 901.1 (2d ed.1993)), *overruled on other grounds, Angleton v. State,* 971 S.W.2d 65, 69 (Tex. Crim.App.1998).

Rule of Evidence 901(b) provides several illustrations of how authentication can be established. Authentication may be established by testimony from a witness with knowledge that the document is what it is claimed to be. Tex.R. Evid. 901(b)(1); *Wood v. State,* 18 S.W.3d 642, 647 (Tex. Crim.App.2000); *Guidry v. State,* 121 S.W.3d 849, 851–52 (Tex.App.-Beaumont 2003, no pet.). Authentication may also be

as "extraneous" did not transform the actual character of these acts. *See Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App.1997).

**3.** Presiding Judge Sharon Keller of the Court of Criminal Appeals provides an excellent discussion of the interplay between Texas's "on

or about" jurisprudence and the rules regarding extraneous offenses in her concurring opinion in *Campbell v. State.* 149 S.W.3d 149, 156–57 (Tex.Crim.App.2004) (Keller, P.J., concurring).

established by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." TEX.R. EVID. 901(b)(4); *Wood,* 18 S.W.3d at 647; *Massimo v. State,* 144 S.W.3d 210, 215 (Tex. App.-Fort Worth 2004, no pet.).

The complainant testified that she was familiar with Shea's e-mail address and that she had received the six e-mails in question from Shea. Thus, her testimony authenticates the e-mails. *See* TEX.R. EVID. 901(b)(1); *Wood,* 18 S.W.3d at 647; *Guidry,* 121 S.W.3d at 851–52.

The Fort Worth court has recently addressed the authentication of e-mail communications in terms of the distinctive characteristics of such communications. In *Massimo,* that court relied on a federal decision to enumerate several characteristics to consider when determining whether an e-mail has been properly authenticated. *Massimo,* 144 S.W.3d at 215–16 (citing *U.S. v. Siddiqui,* 235 F.3d 1318, 1322–23 (11th Cir.2000)). Those characteristics include: "(1) consistency with the e-mail address on another e-mail sent by the defendant; (2) the author's awareness through the e-mail of the details of defendant's conduct; (3) the e-mail's inclusion of similar requests that the defendant had made by phone during the time period; and (4) the e-mail's reference to the author by the defendant's nickname." *Id.*

The six e-mails in question have several of these characteristics. They were sent to the complainant from two different e-mail addresses. The complainant testified that she came to know Shea's e-mail address because he would call to confirm that she had received an e-mail from him. The first three e-mails bore this address. In the fourth e-mail, Shea asked the complainant to no longer use the former address but to use the new address from which he had sent the fourth e-mail. The

latter three e-mails bore this new address. In addition, Shea himself offered in evidence eight e-mails from the complainant to him at this new address.

Two of the e-mails offered by the State make reference to Shea's occupation as a furniture maker. In one of the e-mails, Shea commented that he liked the complainant's locker number. She explained in her testimony that this comment was significant because her locker number had the numerals "22" in it and Shea is twenty-two years older than she.

The complainant testified that the content of the e-mails was similar to conversations she had had with Shea over the telephone. Four of the e-mails were signed "Kev."

For these reasons, the court did not abuse its discretion by admitting the e-mails over Shea's objection to lack of authentication. *See Massimo,* 144 S.W.3d at 216–17. Accordingly, we overrule Shea's third point.

### Misdemeanor Assault By Offensive Or Provocative Contact Is Not A Lesser–Included Offense Of Indecency With A Child

Shea contends in his fourth issue that the court erred by failing to charge the jury on misdemeanor assault by offensive or provocative contact as a lesser-included offense of indecency with a child. Because these offenses have distinctive elements, we disagree.

A jury charge on a lesser-included offense is required if (1) the lesser-included offense is included within the proof necessary to establish the offense charged; and (2) some evidence exists in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Hampton v. State,* 109 S.W.3d 437, 440 (Tex.Crim.App. 2003). Article 37.09 defines when a lesser

offense is included within the proof necessary to establish the offense charged. *See* Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 1981).

As pertinent to this case, article 37.09 provides that an offense is a lesser-included offense if:

- "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;" or
- "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission."

Tex.Code Crim. Proc. Ann. art. 37.09(1), (3).

█ Shea contends that assault by offensive or provocative touching meets the latter definition of a lesser-included offense because "the culpability of the mental state of assault [is] less than that of indecency with a child." Although this may be true in terms of moral or social culpability, it is not a true statement insofar as the legal definitions of these offenses are concerned.

As Shea also observes in his brief, "The mental states required of the two crimes differ." It is the differences in the requisite elements which lead to the conclusion that assault by offensive or provocative contact is not a lesser-included offense of indecency with a child by contact.

Under the statute applicable to Shea's case, a person commits the offense of indecency with a child by engaging in "sexual contact" with the child. *See* Act of May 29, 1993, Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 21.11(a)(1), 1993 Tex. Gen. Laws 3586, 3616 (amended 2001) (current version at Tex. Pen.Code Ann. § 21.11(a)(1) (Vernon 2003)). The former statute defined the term "sexual contact" to be any proscribed touching done "with the intent to arouse or gratify the sexual

desire of any person." *Id.*, sec. 21.01(2), 1993 Tex. Gen. Laws 3586, 3615 (amended 2001) (current version at Tex. Pen.Code Ann. § 21.11(c) (Vernon 2003)).

Conversely, the offense of assault by offensive or provocative contact is committed when a person "knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Pen.Code Ann. § 22.01(a)(3) (Vernon 2003).

The indecency charge required the State to prove that Shea acted with intent to arouse or gratify the sexual desire of some person, not that he knew or should have reasonably believed that the complainant would regard his touching as offensive or provocative. Even though the same evidence may be probative of both elements, they are distinctive elements. *See Ramos v. State*, 981 S.W.2d 700, 701 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *accord Stafford v. State*, No. 02–02–00477–CR, 2003 WL 22923034, at *2, 2003 Tex.App. LEXIS 10439, at *7–8 (Tex.App.-Fort Worth Dec. 11, 2003, pet. ref'd) (mem.op.).

The proof required to establish assault by offensive or provocative contact is different, not less, than that required to prove indecency with a child by contact. Thus, the misdemeanor assault charge is not a lesser-included offense. *See* Tex. Code Crim. Proc. Ann. art. 37.09(1); *Ramos*, 981 S.W.2d at 701; *see also Stafford*, 2003 WL 22923034, at *2, 2003 Tex.App. LEXIS 10439, at *7–8. Accordingly, we overrule Shea's fourth issue.

### The Prosecutor Did Not Comment On Shea's Failure To Testify During The Punishment Argument

█ Shea contends in his fifth issue that the prosecutor impermissibly commented on his failure to testify by mentioning Shea's absence from the courtroom during the punishment argument. Be-

cause the prosecutor did not comment on Shea's failure to testify, we disagree.

It is well settled that a prosecutor's comment amounts to a comment on a defendant's failure to testify only if the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. It is not sufficient that the comment might be construed as an implied or indirect allusion to the defendant's failure to testify.

*Wead v. State,* 129 S.W.3d 126, 130 (Tex. Crim.App.2004). Because a defendant's Fifth Amendment privilege against self-incrimination continues during the punishment phase of trial, this prohibition applies to both the guilt-innocence and the punishment phases. *See Mitchell v. U.S.,* 526 U.S. 314, 325–27, 119 S.Ct. 1307, 1313–14, 143 L.Ed.2d 424 (1999); *Carroll v. State,* 42 S.W.3d 129, 131–32 (Tex.Crim.App. 2001).

▆▆ During jury deliberations at the conclusion of the guilt-innocence phase, Shea left the premises of the courthouse without telling anyone. After the jury returned the guilty verdict, the court conducted a hearing outside the jury's presence to determine whether Shea had voluntarily absented himself from the proceedings. *See* TEX.CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1989). The prosecutor elicited testimony from Shea's girlfriend that Shea and she had come to court together that morning in her car, that Shea had a set of keys to her car, and that her car was no longer in the parking lot. The court found that Shea had voluntarily absented himself from the proceedings.

The punishment phase proceeded that afternoon with the State calling a records custodian and a fingerprint expert to prove-up Shea's prior convictions. The next morning Shea's counsel made an oral motion in limine asking that the prosecutor be instructed to approach the bench before making any reference to Shea's absence from the proceedings. The court denied this request.

During punishment argument, the prosecutor made the following statement:

We don't like everything about all of our legal system. We shouldn't. We tug and pull against it, and that is healthy, but you respect it enough to come up and show up each day. There is not enough respect here to show up for you. There is not enough respect here to show up, to show up for you to finish your work.

This statement is not "of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify." *See Wead,* 129 S.W.3d at 130. Rather, it is a comment on the defendant's failure to return for the punishment hearing. At most, it "might be construed as an implied or indirect allusion to the defendant's failure to testify." *Id.* Thus, it does not constitute an impermissible comment on Shea's failure to testify. Accordingly, we overrule Shea's fifth issue.

The judgment is affirmed.