IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00288-CR

 

Javier Villanueva,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 52nd District
Court

Coryell County, Texas

Trial Court No. FSA-04-17563

 



O p i n i o n



 

            The trial court convicted Javier Villanueva
(who had waived his right to a jury) of indecency with a child by contact, a
second-degree felony, and assessed a ten-year prison sentence.  Villanueva’s
appointed appellate counsel has filed an Anders brief and a motion to
withdraw as counsel.  See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).  Counsel and this court have notified
Villanueva of his right to file a pro se brief or response, but he has not done
so.  We will affirm the trial court’s judgment.

Counsel’s Anders brief considers
all the issues in areas relevant to an appeal of a felony conviction of
indecency with a child by contact in a nonjury trial.  See Sowels v.
State, 45 S.W.3d 690, 691 (Tex. App.—Waco 2001, no pet.), overruled on
other grounds by Meza v. State, ---S.W.3d ---, ---, 2006 WL 2686519, at *3
(Tex. Crim. App. Sept. 20, 2006).  The brief contains references to the
record and to applicable statutes, rules, and cases, and it discusses why
counsel concludes that the record does not present any arguable issues,
including the identification of five issues and discussing why counsel
concludes that they are not arguable and that the appeal is wholly frivolous.[1] 
See id. at 691-92.

The Appellate Court’s Duty in Anders Cases

We must always conduct an independent
review of the record to determine whether there are any arguable grounds for
appeal.  See Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim.
App. 1991).  And when an Anders brief raises potentially arguable
issues, our “duty is to determine whether there are any arguable grounds and if
there are, to remand to the trial court so that new counsel may be appointed to
brief the issues.”  Bledsoe v. State, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005).  But we are not required to review the merits of each claim raised
in an Anders brief or a pro se response.  Id.

Stated another way, if counsel in an Anders
brief or the appellant in a pro se response points out a potential issue, we
must determine whether it is arguable or frivolous.  See, e.g., Coronado v. State, 996 S.W.2d 283 (Tex. App.—Waco 1999, no pet.); Taulung
v. State, 979 S.W.2d 854, 856 (Tex. App.—Waco 1998, no pet.).  This duty
raises several questions.  First, what are “arguable” and “frivolous” issues? 
Second, by what process do we make the determination that an issue is arguable
or frivolous?  And third, do we conduct that process transparently or
summarily?

Any issue that is “arguable on [the]
merits” is, by definition, not frivolous.  See Anders, 386 U.S. at 744, 87 S.Ct. at 1400.  The United States Supreme Court has defined a “wholly
frivolous” appeal as one that “lacks any basis in law or fact.”  McCoy v.
Court of Appeals, 486 U.S. 429, 438 n.10, 108 S.Ct. 1895, 1902 n.10, 100
L.Ed.2d 440 (1988); cf. De La Vega v. Taco Cabana, Inc., 974 S.W.2d 152,
154 (Tex. App.—San Antonio 1998, no pet.) (“It is well established . . . that a
proceeding is “frivolous” when it “lacks an arguable basis either in law or in
fact.”) (quoting Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827,
1831-32, 104 L.Ed.2d 338 (1989)).  Also, “[a]n appeal is ‘frivolous’ when ‘the
trial court’s ruling[s were] correct’ or ‘the appellant was not harmed by the
ruling[s].’”  Wilson v. State, 955 S.W.2d 693, 695 n.2 (Tex. App.—Waco
1997, no pet.) (quoting High v. State, 573 S.W.2d 807, 813 (Tex. Crim. App.
[Panel Op.] 1978)).  This different definition merely represents a different
facet of the Anders process.  Taulung, 979 S.W.2d at 856.  Once
counsel has determined that an appeal is frivolous, counsel must file a brief
identifying anything in the record that might arguably support the appeal and
discussing either why the trial court’s rulings were correct or why the
appellant was not harmed by the rulings.  Id.  “If the only theories
that the attorney can discover after [a] conscientious review of the record and
the law are ‘arguments that cannot conceivably persuade the court,’ then the
appeal should be considered frivolous.”  Johnson v. State, 885 S.W.2d 641,
645 (Tex. App.—Waco 1994, pet. ref’d) (quoting McCoy, 486 U.S. at 436, 108 S.Ct. at 1901).

We determine whether issues identified
by counsel are “frivolous” on a case-by-case basis.  Taulung, 979 S.W.2d
at 857.  “Necessarily, . . . both questions of fact and questions of law may be
involved in a determination that an appeal is frivolous.”  De La Vega,
974 S.W.2d at 154.  In determining whether an issue is frivolous, we do not
address and rule on its ultimate merit.  Bledsoe, 178 S.W.3d at 827; Mitchell
v. State, 193 S.W.3d 153, 156 (Tex. App.—Houston [1st Dist.] 2006, no pet.
h.).

When counsel has presented potentially
arguable issues in an Anders brief, we have detailed our analyses of
those issues in determining whether or not they are arguable.  See, e.g.,
Johnson v. State, No. 10-05-236-CR, 2006 WL 2439737 (Tex. App.—Waco Aug. 23, 2006, no pet. h.) (mem. op.) (not designated for publication); Fernandez
v. State, No. 10-01-121-CR, 2003 WL 131852 (Tex. App.—Waco Jan. 15, 2003,
no pet.) (not designated for publication); Coronado, 996 S.W.2d
283; cf. In re K.D., No. 02-04-349-CV, --- S.W.3d ---, 2006 WL 2440796
(Tex. App.—Fort Worth Aug. 24, 2006, no pet. h.) (reviewing trial court’s
determination that appeal of termination of parental rights was frivolous).  Bledsoe
does not preclude us from articulating our analysis; it states that such an
exercise is not required.  Bledsoe, 178 S.W.3d at 827.

            In this case, as we detail
below, counsel identified and briefed five issues (in a twenty-page brief).  The
dissent would have us summarily state our determination that the issues identified
by counsel are frivolous, thus omitting from the opinion the analysis behind
our determination.  Presumably, the portion of our opinion pertaining to the
five briefed issues should only state:  “Counsel’s Anders brief raises
five issues; we determine that they are frivolous.”

When potentially arguable issues are
raised and briefed by counsel in an Anders brief, we believe it is sometimes
necessary to identify the issues and to provide the appellant, the bar, and the
public with the analysis behind our frivolousness determination. [2] 
This transparency comports with the spirit of the applicable appellate rules (see
Tex. R. App. P. 47.1, 47.4) and only
increases confidence in the judiciary—especially when it occurs in an
appellant’s only appeal of right.  We will thus provide a transparent, detailed
analysis of the five issues raised and briefed by counsel in this case.[3]

Background

            The indictment alleged that
Villanueva, with intent to arouse or gratify his sexual desire, intentionally
or knowingly caused A.H., a child younger than 17 and not his spouse, to engage
in sexual contact with him by causing her to touch his genitals.  Villanueva
was charged in two other cases with intentionally or knowingly engaging in
sexual contact with 12-year-old A.H. and 13-year-old D.H. (who were
Villanueva’s stepdaughters) by touching their breasts.  Villanueva’s trial
counsel filed numerous pretrial motions for discovery, including motions
requesting the State’s witness list and notice of extraneous offenses.  The
trial court granted the motions.  The three cases were tried together; the
trial court acquitted Villanueva on the two breast-touching cases.

Late Notice of Witnesses

The first potentially arguable issue identified
in counsel’s Anders brief is whether the trial court erred in not
excluding two State’s witnesses whom trial counsel alleged were untimely
identified.  The State filed its amended witness list eleven days before trial;
it included two CPS workers not previously identified.  Despite a certificate
of service showing hand-delivery to defense counsel, he asserted he did not
receive it and did not know about it until four days before trial.  He filed a
motion to exclude the two witnesses, but the trial court, after confirming that
Villanueva did not want a continuance and time to prepare for the new
witnesses’ testimony, denied the motion.  Only Kim Walker, one of the two new
witnesses, testified at trial; the other did not.

On the defendant’s request, the State
should give notice of its witnesses.  Stoker v. State, 788 S.W.2d 1, 15
(Tex. Crim. App. 1989); Horner v. State, 129 S.W.3d 210, 214 (Tex. App.—Corpus Christi 2004, pet. ref’d).  If the trial court allows an undisclosed
witness to testify, we review the decision for abuse of discretion.  Horner,
129 S.W.3d at 214; Castaneda v. State, 28 S.W.3d 216, 223 (Tex. App.—El
Paso 2000, pet. ref’d) (citing Stoker, 788 S.W.2d at 15).  In
determining whether the trial court abused its discretion, we consider
whether:  (1) the prosecutor acted in bad faith in failing to provide the
defense with the name of the witness; and (2) the defendant could reasonably
anticipate that the witness would testify despite the State’s failure to
disclose the witness’s name.  See Stoker, 788 S.W.2d at 15; Horner,
129 S.W.3d at 214; Castaneda, 28 S.W.3d at 223.  In determining whether
the State acted in bad faith in failing to provide the name of the witness, we
consider whether the State intended to deceive, whether the State’s notice left
adequate time to prepare, and whether the State freely provided the defense
with information.  See Horner, 129 S.W.3d at 214; Hardin v. State,
20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref’d); see also Stoker,
788 S.W.2d at 15.

Villanueva cannot show bad faith on the
State’s part, nor can Villanueva show surprise since Walker was identified as
someone Villanueva had spoken with as part of CPS’s investigation.  Walker had been identified in the police report, previously provided in discovery, with a
notation that Walker had spoken with Villanueva as part of her CPS
investigation.  Also, Villanueva’s trial counsel told the trial court that the
prosecutor had come to his office a few days before trial to inform him of the
possibility of one or two CPS witnesses.  And four days before trial, the prosecutor
told counsel at court of the amended witness list.  The trial court also
offered Villanueva a continuance, but he did not want it.  Finally, the trial
court excluded the key evidence Walker was to offer—Villanueva’s statement to
her during her CPS investigation—sustaining trial counsel’s objection that the
statement was made during custodial interrogation without Miranda
warnings.

Given the above facts, we agree with
counsel that Villanueva cannot show that the trial court abused its discretion
in allowing Walker to testify.  See Stoker, 788 S.W.2d at 15; Horner,
129 S.W.3d at 214; Castaneda, 28 S.W.3d at 223.  Thus, this ruling is
not an issue that might arguably support an appeal; a ground that the trial
court abused its discretion is not supported by the facts or the law.

Sufficiency of the Evidence

The second potentially arguable issue raised
in the Anders brief is the sufficiency of the evidence to support the
trial court’s guilt finding.  We consider the well-established standards of
review for legal and factual sufficiency of the evidence.  See, e.g., Abbott
v. State, 196 S.W.3d 334, 338-39 (Tex. App.—Waco 2006, pet. filed).

            A.H. testified that on the
night in question, Villanueva entered her and her sister’s bedroom around 1:00
or 2:00 a.m. and woke them up to do chores the night before the “Welcome Home”
celebration for some of the “4th ID” soldiers at Fort Hood.  When the chores were
done, A.H. laid down on her side on a pallet on the bedroom floor.  Villanueva
laid down behind her and began thrusting his lower body against hers.  She
could feel his penis.  When she asked him what he was doing, he responded,
“Well, somebody’s got to teach you.”  When she told him to stop, he told her to
at least give him a kiss, and he tried to put his tongue in her mouth.  She
screamed, and her mother came in the bedroom, while Villanueva went in the
bathroom.  A.H. told her mother what had happened, and her mother said she
would talk to him.

            D.H. said she was sleeping
when she heard A.H. scream.  She awoke and saw Villanueva and A.H. in the room
but nothing else.  She heard her mother getting out of bed and come to the
room, and Villanueva went in the bathroom.  A couple of months later, A.H. and
D.H. went to stay with their grandparents for the summer, and A.H. made an
outcry to her grandmother about Villanueva’s alleged sexual assault.  Her
grandmother contacted CPS and the police and made a written statement, and then
A.H. did a videotaped interview with CPS.

A person commits the offense of
indecency with a child “if, with a child younger than 17 years and not the
person’s spouse, whether the child is of the same or opposite sex, the person .
. . engages in sexual contact with the child or causes the child to engage in
sexual contact.”  Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 2003).  In section 21.11, “sexual contact”
means the following acts, if committed with the intent to arouse or gratify the
sexual desire of any person:  “(2) any touching of any part of the body of a
child, including touching through clothing, with the anus, breast, or any part
of the genitals of a person. . . .”  Id. § 21.11(c)(2).  An offense under subsection (a)(1) is a
second-degree felony. Id. §
21.11(d).

            A.H. was younger than 17
and was not Villanueva’s spouse.  In addition to the above, she also testified
that Villanueva was moving the front of his lower body against her and his
penis felt like it was “poking [her] butt.”  A complainant’s testimony alone is
sufficient to support a conviction for indecency with a child.  Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon 2005) (requirement that victim inform another person within one year
does not apply to person under 17 at time of offense); see Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. 1978).

The requisite specific intent to arouse
or gratify can be inferred from the defendant’s conduct and remarks and all the
surrounding circumstances.  Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App.
[Panel Op.] 1981); Gottlich v. State, 822 S.W.2d 734, 741 (Tex. App.—Fort Worth 1992, pet. ref’d), abrogated on other grounds by Arevalo v. State,
943 S.W.2d 887, 888-90 (Tex. Crim. App. 1997).  An oral expression of intent is
not required; the conduct itself is sufficient to infer intent.  C.F. v.
State, 897 S.W.2d 464, 472 (Tex. App.—El Paso 1995, no writ).  Thus, the
trial court could infer from Villanueva’s conduct that it was done with the
intent to arouse and gratify his sexual desire.  See Gottlich, 822
S.W.2d at 741; Fetterholf v. State, 782 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1989, pet. ref’d).

The indictment alleged that the offense
occurred on or about June 12, 2004, but it was clear that it actually occurred
in April 2004.  The indictment’s “on or about” language allows the State to
prove a date other than one alleged in the indictment as long as the date is
anterior to the presentment of the indictment and within the statutory
limitation period.  See Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); Shea v. State, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet.
ref’d).

            A.H. admitted on
cross-examination that she had not mentioned feeling Villanueva’s penis when
she first told her mother and grandmother about the incident.  A.H. and D.H.
both testified that they did not like how Villanueva punished them, and there
was evidence that A.H. did not seem upset the following day.  A.H.’s mother,
who was still married to and living with Villanueva at the time of trial, said
that she saw him lying on the floor behind A.H. and that A.H. told her that
Villanueva was “being nasty.”  She asked A.H. to explain, and A.H. said that he
had tried to kiss her; the mother did not recall A.H. saying anything about
Villanueva rubbing her behind.  A.H.’s grandmother testified over objection as
the outcry witness.  Her testimony was consistent with A.H.’s, but her written
statement did not mention Villanueva’s penis.

            We agree with counsel that sufficiency
of the evidence is not an issue that might arguably support an appeal.

Extraneous Offenses

            An
extraneous offense is any act of misconduct, whether resulting in prosecution
or not, that is not shown in the charging papers and shown to have been
committed by the accused.  Rankin v. State, 953 S.W.2d 740, 741 (Tex.
Crim. App. 1996); Shea, 167 S.W.3d at 104.  Evidence of multiple
occurrences of the defendant’s same conduct against the same victim is
admissible, and such evidence does not amount to evidence of extraneous
offenses if it can be included in the indictment.  See Worley v. State,
870 S.W.2d 620, 621-23 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).

Trial counsel objected to A.H.’s and
D.H.’s testimony about other instances of Villanueva touching their breasts,
alleging that those instances were extraneous offenses for which notice had not
been given.  These acts were identical to the
charges in the other two cases that were tried together and thus were not
extraneous offenses.  Based on the record, we agree with counsel that the
trial court’s admission of these acts is not an issue that might arguably
support an appeal.

Outcry Witness

The trial court overruled counsel’s objection to the State’s
calling the grandmother as an outcry witness.  The outcry-witness statute
applies in a prosecution of an offense against a child 12 years of age or
younger and only to statements that describe the alleged offense that (1) were
made by the child complainant and (2) were made to the first person, 18 years
of age or older, other than the defendant, to whom the child made a statement
about the offense.  Tex. Code Crim.
Proc. Ann. art. 38.072 (Vernon 2005).  The Court of Criminal Appeals has
construed this to mean the first adult “to whom the child makes a statement
that in some discernible manner describes the alleged offense.  [This]
statement must be more than words which give a general allusion that something
in the area of child abuse was going on.”  Garcia v. State, 792 S.W.2d
88, 91 (Tex. Crim. App. 1990).  “[A] trial court has broad discretion in
determining” the proper outcry witness.  Id. at 92.  Thus, we review a
trial court’s ruling for an abuse of discretion.  Id. at 91-92.

The proper outcry witness is the adult to whom the complainant
first tells “how, when, and where” she was assaulted.  See Hanson v. State,
180 S.W.3d 726, 730 (Tex. App.—Waco 2005, no pet.); Sims v. State, 12
S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref’d).  Here, while it is clear
that A.H. first told her mother about the incident, her mother denied that A.H.
made an outcry that Villanueva had rubbed his penis against her.  The trial
court could have concluded that A.H. did not tell her mother the “how”—all of
the details—of Villanueva’s conduct.  The trial court also noted that the
mother was aligned with Villanueva at trial.

The potentially arguable issue identified by counsel is whether the
trial court abused its discretion in determining that the grandmother was the
proper outcry witness.  See Hanson, 180 S.W.3d at 730; Smith v.
State, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref’d)
(complainant told mother and doctor that defendant “had been performing oral
sex on him” then later provided details to another adult); Castelan v.
State, 54 S.W.3d 469, 475-76 (Tex. App.—Corpus Christi 2001, no pet.)
(complainant told grandmother that defendant had “put his thing in through the
back” then later provided details to counselor); Sims, 12 S.W.3d at 500
(complainant told mother that defendant “had touched her private parts,” then
later provided details to counselor).  However, we agree with counsel that the trial court’s finding that the
grandmother was the outcry witness is not an issue that might arguably support
an appeal.

Ineffective Assistance of Counsel

The standard in Strickland v.
Washington applies to a claim of ineffective assistance of counsel.  Strickland
v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To prevail, a defendant must first
show that his counsel’s performance was deficient.  Id. at 687, 104
S.Ct. at 2064; see Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim.
App. 2002).  Then it must be shown that this deficient performance prejudiced the
defense.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

            Appellate review of defense
counsel’s representation is highly deferential and presumes that counsel’s actions
fell within the wide range of reasonable and professional assistance.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical or strategic decision-making as to
overcome the presumption that counsel’s conduct was reasonable and
professional.  See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Mitchell, 68 S.W.3d at 642.  Rarely will the trial record
contain sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation:  “[i]n the majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.”  Thompson v. State, 9 S.W.3d 808, 813-14
(Tex. Crim. App. 1999); see also Mitchell, 68 S.W.3d at 642 (“The
reasonableness of counsel’s choices often involves facts that do not appear in
the appellate record.  A petition for writ of habeas corpus usually is the
appropriate vehicle to investigate ineffective-assistance claims.”).

            In the absence of evidence
of trial counsel’s reason for the challenged conduct, we assume a strategic
reason for trial counsel’s conduct, if one can be imagined.  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (“an appellate court
‘commonly will assume a strategic motivation if any can possibly be imagined,’
and will not conclude the challenged conduct constituted deficient performance
unless the conduct was so outrageous that no competent attorney would have
engaged in it”) (quoting 3 W. Lafave, et
al., Criminal Procedure § 11.10(c) (2d ed. 1999), and citing Thompson,
9 S.W.3d at 814).  But, if nothing in the record reveals trial counsel’s
reason, it is improper for us to speculate on it.  See Thompson, 9
S.W.3d at 814.

As counsel notes in the Anders brief, Villanueva’s trial
counsel filed and obtained rulings on appropriate pretrial motions.  He was
diligent in protecting the record for appeal, was thorough in examining
witnesses, and obtained an acquittal in the other two cases.  The range of
punishment for a second-degree felony is two to twenty years in prison.  In the
punishment phase the State proved a prior sexual offense, which trial counsel
addressed.  He advanced Villanueva’s arguments and asked for deferred
adjudication, but the trial court imposed a ten-year sentence.

We agree with counsel that, based on the record, an ineffective
assistance claim is not
an issue that might arguably support an appeal.

Conclusion

We have also conducted an independent
review of the record to determine whether there are any other arguable grounds
for appeal.  See Stafford, 813 S.W.2d at 511.  We determine
there are none.  Accordingly, we affirm the judgment.

Counsel must advise Villanueva of our
decision and of his right to file a pro se petition for discretionary
review.  See Sowels, 45 S.W.3d at 694; see also Meza v. State,
---S.W.3d ---, --- n.23, 2006 WL 2686519, at *3 n.23 (Tex. Crim. App. Sept. 20,
2006);
Ex parte Owens, --- S.W.3d ---, ---, 2006
WL 2619989, at *1 (Tex. Crim. App. Sept. 13, 2006).  We grant counsel’s motion to withdraw, effective upon
counsel’s advising Villanueva of 
our decision and of his right to file a pro se petition for discretionary
review.  See Meza, ---S.W.3d at ---, 2006 WL 2686519, at *3.

 

 

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring)

Affirmed;
motion to withdraw granted

Opinion
delivered and filed October 18, 2006

Publish

[CR25]









[1]               We have
previously found that even an appeal following a contested trial might present
no issues of arguable merit.  See Taulung v. State, 979 S.W.2d 854, 858
(Tex. App.—Waco 1998, no pet.) (bench trial of sexual assault case).





[2]               A pro se response that
raises and briefs potentially arguable issues also could warrant a detailed analysis.

 





[3]               We will let others
assess the concurring opinion’s characterization of this opinion as
“mind-numbing.”