# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-16-00856-CR

**Phillip Beaty, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-15-302682, HONORABLE KAREN SAGE, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found appellant Phillip Beaty guilty of aggravated assault with a deadly weapon. *See* Tex. Penal Code § 22.02(a)(2). The jury then assessed punishment at 20 years' imprisonment, and the trial court rendered judgment consistent with the jury's verdicts. In his sole appellate issue, Beaty contends that the trial court abused its discretion in admitting electronic images from the social media website Facebook. We will affirm the trial court's judgment of conviction.

### BACKGROUND

At trial, the State alleged that Beaty shot Rogelio Moran with a handgun in the early morning hours of November 1, 2015, near the Texas Club in southeast Austin. The State presented the testimony of several witnesses, including the club's owner and two of its bouncers. These witnesses testified that a bald Hispanic man with a striped shirt got into a fight in the parking lot.

The man then dropped a gun, picked the gun up, and got into a vehicle. The vehicle drove a short distance, the man got out and fired a shot, the man got back into the vehicle, and the vehicle drove away. The bouncers testified that the suspect had a tattoo on his head that said "Philly." The State presented surveillance video footage from the club and Exhibit 27, a still image from the video showing a bald suspect wearing a striped shirt.

The State also called Paul Tronco, who at the time was a detective with the Austin Police Department. Detective Tronco testified that he used Facebook to help identify the shooting suspect. During his testimony, the State offered Exhibits number 23 through 26. Exhibit 23 is a screenshot taken from the Facebook account of "Jonathan B. Esquivel" and shows that Esquivel "added 2 new photos" on "November 1 2015." The post includes the following caption above the photos:

Holloween [sic] 2015

#Party

Exhibit 24 is an enlarged copy of one of the photos. It shows two men, whom Detective Tronco identified as Esquivel and Beaty. The man identified as Beaty is bald, tattooed, and wearing a shirt that matches the witnesses' descriptions as well as the image of the suspect in Exhibit 27, which was taken from surveillance video footage. Exhibit 25 is an enlarged copy of the other photo. It again shows the two individuals alleged to be Esquivel and Beaty. Exhibit 26 appears to be a screenshot of a Facebook post made by Esquivel on "January 17." It includes a photograph of a man whom Detective Tronco identified as Beaty and also includes the following text, which is quoted verbatim:

Alright yall Lil Philly doing good, holdin his head up! Says he misses and loves all his real niggas who been down since day one, and for yall to fuxk with em. Wont know nothing about his caes for another month or so

#FreeMyLilBro

The image also shows comments other users made on the post.

As the following excerpt of the trial transcript shows, Beaty objected to these exhibits, and the trial court overruled the objection:

[Prosecutor:] Through your research in attempting to identify Mr. Beaty, did you search Facebook?

[Tronco:] I did.

[Prosecutor:] And did you find a particular Facebook page of an individual with photographs from Halloween night of Mr. Beaty?

[Tronco:] I did.

[Prosecutor:] Who's Facebook page was that?

[Tronco:] His brother, Jonathan Esquivel.

[Prosecutor:] And in addition to finding the photographs of Mr. Beaty from that night, did you find—did you continue to monitor that Facebook page?

[Tronco:] I did.

[Prosecutor:] Why did do you that?

[Tronco:] Until the case goes to trial, you never know what evidence is going to come up.

***

[Prosecutor:] I want to show you what's been marked as State's Exhibits Number 23 through 26, and ask you to take a look at those.

[Tronco:] Okay.

[Prosecutor:] Do you recognize those?

[Tronco:] I do.

[Prosecutor:] How do you recognize those?

[Tronco:] I uploaded these.

[Prosecutor:] When you up loaded [sic] them, does that mean you saved them from your computer?

[Tronco:] I took a screenshot and then I took that screenshot and I attached it to our incident reporting system electronically.

[Prosecutor:] And are these the Facebook page—the pictures from Jonathan Esquivel's Facebook page that you found relevant to that night?

[Tronco:] I did.

[Prosecutor:] And are these exactly as you found them when you were doing your research?

[Tronco:] Yes.

[Prosecutor:] And the State's Exhibits Number 23, 24, and 25, do you recall when you found those?

***

[Prosecutor:] That was early in your investigation?

[Tronco:] Yes. It was posted on the 1st, but I didn't find it on the 1st.

[Prosecutor:] And on State's Exhibit Number 26, do you recall, was that posted on a later date?

[Tronco:] It was January 17th.

[Prosecutor:] You found that on a later date?

[Tronco:] I did.

4

[Prosecutor:] At this time, Your Honor, we'd offer State's Exhibits Number 23, 24, 25, and 26. They've all been tendered to defense counsel previously.

[Defense Counsel:] Your Honor, I would object, in that I don't think there's a proper predicate here. I think they need somebody from Facebook to authenticate these photographs, the dates and whatever, and see what they say. I don't think they have a valid predicate. I think they need somebody from Facebook to authenticate these.

[The Court:] Objection overruled. They will come in.

Beaty was subsequently convicted and sentenced, and this appeal followed.

## DISCUSSION

In his sole appellate issue, Beaty contends that the trial court abused its discretion in admitting the Facebook exhibits because the exhibits were not properly authenticated. We review the trial court's decision as to whether evidence is properly authenticated for an abuse of discretion. *See Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.). "A trial court does not abuse its discretion when it reasonably believes that a reasonable juror could find that the evidence has been authenticated," and "[i]f the trial court's ruling is at least within the zone of reasonable disagreement, we will not interfere." *Campbell*, 382 S.W.3d at 549 (quotation marks omitted) (citing *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007)).

Under rule 104(a) of the Texas Rules of Evidence, whether to admit evidence at trial is a preliminary question to be decided by the court. *See* Tex. R. Evid. 104(a); *Tienda*, 358 S.W.3d at 637–38. Only relevant evidence is admissible. *See* Tex. R. Evid. 401, 402. "The issue of authentication—that the proffered evidence is what the proponent claims it to be—arises when 'the relevancy of any evidence depends upon its identity, source, or connection with a particular person,

5

place, thing, or event.'" *Campbell*, 382 S.W.3d at 548–49 (quoting *Shea v. State*, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. ref'd)). "Evidence has no relevance if it is not authentically what the proponent claims it to be." *Id.* at 549 (citing *Tienda*, 358 S.W.3d at 638). The requirement of authentication or identification may be satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. *See id.* (citing Tex. R. Evid. 901(a)). This is not "a particularly high hurdle," and it "may be cleared by circumstantial evidence." *Id.* "In fact, in performing its gate-keeping function under rule 104, the trial court itself need not be persuaded that the proffered evidence is authentic." *Id.* (citing *Tienda*, 358 S.W.3d at 638). "In a jury trial, the preliminary question for the trial court to decide is simply whether the proponent of the proffered evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence is authentic." *Id.*; *see Tienda*, 358 S.W.3d at 638 ("The ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact-finder . . . .").

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda*, 358 S.W.3d at 638. "Printouts of emails, internet chat room dialogues, and cellular phone text messages have all been admitted into evidence when found to be sufficiently linked to the purported author so as to justify submission to the jury for its ultimate determination of authenticity." *Id.* at 639. Social media posts and other electronic media have been authenticated in a number of different ways, and no one method of authentication is required. *See id.* at 641 ("And sometimes other circumstances, peculiar to the facts of the particular case, have sufficed to establish at least a prima facie showing of authentication."); *see also Woods v. State*, No. 11-15-00134-CR, 2017 WL 3711104, at *5 (Tex. App.—Eastland Aug. 25, 2017, no pet. h.)

6

(mem. op., not designated for publication) ("The *Tienda* court examined the issue and held that evidence can authenticate such posts with reference to specific details only the purported author would know, messages referring to the alleged incident, and unique photos of the purported author. Since that decision, this court and others have affirmed the use of properly authenticated social media accounts on similar grounds.") (citation omitted).

In *Tienda*, for example, the court of criminal appeals explained that circumstantial evidence, including images of the defendant's distinctive tattoos, was sufficient to authenticate the defendant's social media posts:

> This combination of facts—(1) the numerous photographs of the appellant with his unique arm, body, and neck tattoos, as well as his distinctive eyeglasses and earring; (2) the reference to David Valadez's death and the music from his funeral; (3) the references to the appellant's "Tango Blast" gang; and (4) the messages referring to (a) a shooting at "Rumors" with "Nu–Nu," (b) Hector as a "snitch," and (c) the user having been on a monitor for a year (coupled with the photograph of the appellant lounging in a chair displaying an ankle monitor) sent from the MySpace pages of "ron Mr. T" or "MR. SMILEY FACE" whose email address is "ronnietiendajr@"—is sufficient to support a finding by a rational jury that the MySpace pages that the State offered into evidence were created by the appellant. This is ample circumstantial evidence—taken as a whole with all of the individual, particular details considered in combination—to support a finding that the MySpace pages belonged to the appellant and that he created and maintained them.

*Tienda*, 358 S.W.3d at 645 (footnote omitted). The *Tienda* court also emphasized that the State was not required to remove all doubt concerning the posts' authenticity, which was ultimately a jury question:

> It is, of course, within the realm of possibility that the appellant was the victim of some elaborate and ongoing conspiracy . . . . But that is an alternate scenario whose likelihood and weight the jury was entitled to assess once the State had produced a

7

prima facie showing that it was the appellant, not some unidentified conspirators or fraud artists, who created and maintained these MySpace pages.

*Id.* at 645–46.

While the case law discussed above is instructive, many of the cases dealing with the authentication of electronic media are distinguishable from this case because, in those cases, the identity of the person who created the message was critical to its relevance. *See, e.g.*, *id.* at 635–36 (messages boasting of the shooting and threatening "those who had been 'snitchin'"); *Woods*, 2017 WL 3711104, at *5–6 (message accusing victim of lying). Here, the issue is not what message Beaty allegedly communicated through the Facebook posts, because it was undisputed that Beaty did not post the content to Facebook. Instead, the issue is merely whether the photographs depict Beaty's clothing and appearance at the time of the shooting.[1] Therefore, the precise origin of the Facebook posts is less crucial.

Detective Tronco testified that he visited the Facebook page of Beaty's brother and took screenshots of content he found there. He testified that the exhibits contained the images "exactly as [he] found them when [he was] doing [his] research." Moreover, the exhibits themselves contain evidence that they portray Beaty and that they were posted by his brother, including the fact that: (1) the post shows that "Jonathan B. Esquivel added 2 new photos"; (2) the post includes the captions "Holloween [sic] 2015" and "#Party" and also shows that the post was made on "November 1 2015"; (3) the two photos in Exhibits 23 through 25 depict a man that Detective

---

[1] The Facebook photographs purport to show how Beaty was attired on Halloween, and the shooting happened as Beaty was leaving the Texas Club shortly after 2 am on the following morning, November 1st.

8

Tronco identified as Beaty's brother; (4) the two photos in Exhibits 23 through 25 depict a man identifiable as Beaty through his distinctive tattoos, which both the trial court and jury personally observed, *see Tienda*, 358 S.W.3d at 645 (holding that the evidence was sufficient to support authentication, in part because the posts depicted "numerous photographs of the appellant with his unique arm, body, and neck tattoos, as well as his distinctive eyeglasses and earring"); (5) Exhibit 26 shows that "Jonathan B. Esquivel" posted the content, and the profile picture[2] for this "Jonathan B. Esquivel" is the same as the profile picture for the "Jonathan B. Esquivel" that posted the photos in Exhibits 23 through 25; (6) the post in Exhibit 26 references "Lil Philly," "Cuz Philly Dinero," and "That boy Philly," and the trial court and jury could have personally observed that Beaty's first name was Phillip and that he had the word "Philly" tattooed prominently on the back of his head; and (7) Exhibit 26 includes a photo showing a person that the trial court and jury could have concluded was Beaty.[3]

In light of this abundant internal evidence, coupled with Detective Tronco's testimony, we hold that it would not have been outside the zone of reasonable disagreement for the trial court to conclude that a reasonable jury could have determined that the evidence was authentic. *See id.* at 638 (describing standard of review); *Campbell*, 382 S.W.3d at 549 (same). Of course, someone else could have manipulated images of Beaty and hacked into Esquivel's account or

_____

[2] A small profile picture appears next to Esquivel's name at the top of the Facebook posts.

[3] The trial court and jury could have concluded that the person depicted in Exhibit 26 was Beaty for at least two reasons. First, they could observe Beaty's appearance in court. Second, the trial court and jury were previously shown State's Exhibit 22A, which was a recording of a "video visit" between Beaty, who was incarcerated, and "his wife or his baby's mom." In the recording, both Beaty and the background behind him appear exactly as they do in the photograph in Exhibit 26.

9

uploaded them to Facebook through an alias account. But the likelihood of such "an alternate scenario" was for the jury to weigh. *See Tienda*, 358 S.W.3d at 646. Accordingly, we cannot conclude that the trial court abused its discretion in overruling Beaty's objection and admitting Exhibits 23 through 26.

Furthermore, even if the trial court erred in admitting these exhibits, we would conclude that this error was not reversible. Generally, the erroneous admission of evidence is non-constitutional error that we must disregard unless it affects the defendant's "substantial rights." *See* Tex. R. App. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010) (applying rule 44.2(b) analysis when trial court erroneously admitted evidence); *Sandoval v. State*, 409 S.W.3d 259, 304 (Tex. App.—Austin 2013, no pet.) ("The erroneous admission of extraneous-offense evidence is non-constitutional error."). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "Where the error did not influence the jury or had but a 'slight effect,' substantial rights are not affected." *Cantos v. State*, No. 03-14-00585-CR, 2016 WL 691012, at *2 (Tex. App.—Austin Feb. 19, 2016, no pet.) (mem. op., not designated for publication) (quoting *Sandoval*, 409 S.W.3d at 293).

Here, in addition to the Facebook posts, the State presented the testimony of the Texas Club's owner and two bouncers. All three men provided descriptions of the shooting and the suspect, and their descriptions of the suspect matched Beaty's appearance. The bouncers noted that the suspect had "Philly" tattooed on the back of the head, and the jury was shown Beaty's "Philly" tattoo during trial. The club's owner identified Beaty in court as "the individual that [he]

10

saw in the club that night that was in the fight out in the street, that dropped the gun, and that committed the shooting further down the street," one bouncer identified Beaty in court as "the individual that was in the fistfight, that dropped the gun that night at the Texas Club," and the other bouncer identified Beaty in court as "the individual that has the Philly tattoo that had the striped shirt . . . and the bald head." Additionally, Officer Jason Ullo of the Austin Police Department testified that he arrived at the location of the shooting after the suspect had fled and, after speaking with witnesses, compiled a description of the suspect as "Hispanic male, mid 20s, shaved head with tattoos all over his body and face, and one specific tattoo that said Philly on the back of his head." Bobby Cooper, an employee of Travis County, testified that he knew Beaty, that Detective Tronco showed him a video of the incident at the bar, and that he recognized Beaty in the video. Finally, the State presented the video from the bar and Exhibit 27, a still image taken from the video, and the jury could have concluded for itself that Beaty appeared in the video.

Given this strong evidence of Beaty's guilt, we conclude that any error the trial court may have made in admitting the Facebook exhibits did not have "a substantial and injurious effect or influence in determining the jury's verdict," did not affect Beaty's substantial rights, and was not reversible. *See Schmutz*, 440 S.W.3d at 39.[4]

---

[4] Beaty argues that the admission of the Facebook exhibits was harmful because "some of the State's eyewitness evidence lacked credibility, and the rest was limited in scope." Specifically, he points out that the Texas Club's owner and two bouncers had been unable to pick Beaty out of a photo lineup. However, as the two bouncers explained at trial, all of the individuals in the photo lineup they were shown had hair, whereas the suspect they saw the night of the shooting was bald and had distinctive head tattoos. Moreover, whatever reticence they may have had before trial, the club owner and the two bouncers unequivocally identified Beaty as the shooting suspect while under oath in court. Given the fact that Beaty's baldness and tattoos were features that the eyewitnesses focused on during the shooting incident and the fact that Beaty had hair in the photo lineup, we

Because we conclude that the trial court did not abuse its discretion in admitting the Facebook exhibits, and because we further conclude that any error the trial court may have made in admitting the exhibits did not affect Beaty's substantial rights, we overrule Beaty's sole appellate issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Goodwin, Field, and Bourland

Affirmed

Filed:   November 15, 2017

Do Not Publish

---

conclude that their inability to pick Beaty out of a lineup did not so detract from the force of their testimony as to leave Beaty's identity as the shooter in serious doubt, even excluding the Facebook exhibits.