Benton’s first two issues assert that the evidence is legally and
factually insufficient to support the jury’s guilty verdict











 

IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00231-CR

 

kip
lee benton,

                                                                                    Appellant

 v.

 

The
State of Texas,

                                                                                    Appellee

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 29901CR

 



O p i n
i o n



 

            Kip Benton was charged by indictment with eight counts of aggravated sexual assault of a
disabled individual.  A jury found him guilty on two counts and assessed a
sixty-year prison sentence on each count.  The trial court ordered the
sentences to be served consecutively.  Benton raises three issues in this
appeal.  We will affirm.

Legal Sufficiency of the Evidence

Benton’s second and third issues complain that the evidence is factually and legally insufficient
to support the jury’s guilty verdict.  We will first review his third issue,
which specifically asserts that there is no legally sufficient evidence that
B.A., the victim, was a disabled person.

When
reviewing a challenge to the legal sufficiency of the evidence to establish the
elements of a penal offense, we must determine whether, after viewing all the
evidence in the light most favorable to the verdict, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2789, 61 L.Ed.2d 560 (1979).  Our duty is to determine if the finding of the
trier of fact is rational by viewing all of the evidence admitted at trial in
the light most favorable to the verdict.  Adelman v. State, 828 S.W.2d
418, 422 (Tex. Crim. App. 1992).  In doing so, any inconsistencies in the
evidence are resolved in favor of the verdict.  Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000).

A
person commits the offense of aggravated sexual assault of a disabled
individual, as alleged in counts one and three, if the person (1) intentionally
or knowingly (2) caused the sexual organ of the victim to contact or penetrate the
mouth of the person (3) without the victim’s consent, and (4) the victim is a
disabled individual.  See Tex.
Pen. Code Ann. § 22.021(a)(1)(A)(iii), (a)(1)(C), (b)(2) (Vernon Supp.
2006).  In a prosecution under section 22.021, the term “disabled individual”
has the meaning assigned by section 22.04(c), which defines “disabled
individual” as “a person older than 14 years of age who by reason of age or
physical or mental disease, defect, or injury is substantially unable to
protect himself from harm or to provide food, shelter, or medical care for
himself.”  Id. § 22.04(c)(3).

B.A.’s
mother testified that B.A. was nineteen at the time of trial and lived in a
group home for the disabled that provides them shelter and work.  B.A. lives
there because he cannot live on his own due to permanent brain damage that he
suffered when he was hit by a truck at age twelve; he cannot provide food,
care, and shelter for himself.  His mother said that when B.A. was fifteen and
sixteen (his ages when the alleged offenses occurred), B.A. lacked the ability
to live independently, could not defend himself physically, and could not
provide food, care, and shelter for himself.

B.A.’s
father testified that B.A. was struck by a truck, was in a coma for three
weeks, and was hospitalized for three months.  He suffered permanent damage to
his brain stem that causes severe thought process delays.  He too said that
B.A. cannot physically defend himself, and B.A. cannot hold a job or provide
for himself.  The manager of the group home said that the persons who live
there are mentally retarded or mentally handicapped persons who are unable to
live on their own.  B.A.’s special ed counselor testified that B.A. had
cognitive problems from his traumatic brain injury that impacted his frontal
lobe; he has disinhibition, sensitivity, and polarized thinking.

Jim
Harris testified that he knew B.A. from school and that B.A. was treated the
same as other kids at school.  While he was not picked on, other students would
put B.A. up to things like saying or doing something to someone because B.A.
was real vulnerable.  Harris knew that B.A. was brain-damaged but said that
B.A. could defend himself.  B.A. could act out or repeat movie and television
parts accurately.  In rebuttal, one of B.A.’s special ed teachers said that
B.A. was teased by other students and he spent a lot of time in her classroom
because it was a safe place.

Benton argues that there no evidence of B.A.’s diagnosis and that B.A.’s ability to
testify was evidence he was not disabled.  The jury observed B.A. while he was
testifying, and in addition to the testimony of B.A.’s parents and counselor
about his brain injury, the counselor said that B.A.’s IQ tested at 60.  Viewing
the evidence in the light most favorable to the verdict, we find that a
rational trier of fact could have found beyond a reasonable doubt that B.A. was
a disabled individual as defined by section 22.04(c)(3).  Issue three is
overruled.

Factual Sufficiency of the Evidence

In
his second issue, Benton argues that the evidence is factually insufficient
because the only evidence of the offenses was B.A.’s testimony and there was no
corroborating testimony or physical evidence.

In
a factual sufficiency review, we ask whether a neutral review of all the
evidence, though legally sufficient, demonstrates either that the proof of
guilt is so weak or that conflicting evidence is so strong as to render the
factfinder’s verdict clearly wrong and manifestly unjust.  Watson v. State,
204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the evidence weighed
by the jury that tends to prove the existence of the elemental fact in dispute
and compares it with the evidence that tends to disprove that fact.”  Johnson,
23 S.W.3d at 7 (quoting Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim.
App. 1996)).  The appellate court “does not indulge in inferences or confine
its view to evidence favoring one side of the case.  Rather, it looks at all
the evidence on both sides and then makes a predominantly intuitive judgment. .
. .”  Id. (quoting William Powers and Jack Ratliff, Another Look at
“No Evidence” and “Insufficient Evidence,” 69 Texas L. Rev.
515, 519 (1991)).  The nature of a factual sufficiency review authorizes an
appellate court, although to a very limited degree, to act as the so-called
“thirteenth juror” to review the factfinder’s weighing of the evidence and
disagree with the factfinder’s determination.  Watson, 204 S.W.3d at
416-17.

            While
Ellis County Sheriff’s Department officers were interviewing B.A.’s younger
brother at B.A.’s home, B.A. asked to speak to the officers.  In his father’s
presence, B.A. made an outcry that he had been sexually assaulted.  The next
day an officer and an investigator interviewed B.A., who told them that Benton had sexually assaulted him at Benton’s home and auto shop in the summer of 2002 or
2004.  B.A. said that on one occasion, Benton photographed him.  A search
warrant was obtained, and a camera was seized; it had no photographs of B.A., and
no pornography or anything incriminating was found.  Benton confirmed to
officers that B.A. had worked for him in the time periods alleged by B.A.

            B.A.
testified that he met Benton through his cousin, and they started working for
him for twenty dollars a day.  B.A. liked Benton and hanging out with him; when
B.A. worked for Benton, he would also go home with him.  On the first occasion,
B.A.’s cousin took him to Benton’s house, and Benton said he wanted to give
B.A. a test on cars.  B.A. and Benton went into Benton’s computer room, where
an oral sexual assault occurred, while the cousin and B.A.’s brother waited
outside.  Benton took photos of B.A. and gave him $20.

B.A.
described two other incidents at Benton’s home.  The next incident was the same
as the first, except no photos were taken.  On the other occasion, anal sex
occurred.  Benton again paid him $20 and said he would give him $20 every
time.  B.A. described two incidents at Benton’s shop similar to those at Benton’s home.  During these occasions, Benton would send the cousin to test drive a car
and would lock the door.

B.A.’s
counselor said that B.A. never discussed sexual abuse with her.  James Low, Benton’s cousin who had known Benton for sixteen years, testified that Benton had never
done anything “weird” to him.  Matthew Rogers said he had known Benton since 1994, when Benton was a youth minister.

B.A.
testified that Benton committed the offenses of which he was convicted.  A
complainant’s uncorroborated testimony alone is sufficient to support a
conviction for aggravated sexual assault under section 22.021.  Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon 2005) (requirement that victim inform another person within one year
does not apply to person under 17 at time of offense); see Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. 1978); Abbott v. State, 196 S.W.3d
334, 341 (Tex. App.—Waco 2006, pet. ref’d).  The State had no burden to produce
corroborating or physical evidence, and the jury determines the credibility of
the witnesses and may “believe all, some, or none of the testimony.”  Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  Considering all of
the evidence in a neutral light, we find that the jury was justified in finding
 Benton guilty.  Watson, 204 S.W.3d at 415.  We overrule Benton’s second issue.




Motion for New Trial

            Benton’s first issue complains that the trial court abused its discretion in denying his
motion for new trial, which argued that the jury had “received other evidence”
after retiring to deliberate.  We review a trial court’s denial of a motion for
new trial for an abuse of discretion.  Salazar v. State, 38 S.W.3d 141,
148 (Tex. Crim. App. 2001).  Under that standard of review, we review the trial
court’s ruling in light of what was before the trial court at the time the
ruling was made, and we must uphold the trial court’s ruling if it was within
the zone of reasonable disagreement.  Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 1990).

            The
trial court admitted into evidence Benton’s camera that officers had seized. 
After the jury’s first day of deliberations, the court reporter noticed that
the camera’s memory chip had been taken out.  The next morning, the trial judge
informed the parties that he had instructed the court reporter not to send the
chip back to the jury when they resumed deliberations.  After the jury returned
a guilty verdict on the two counts, the defense moved for a mistrial for jury
misconduct because the jury may have viewed the images on the chip and those
images were not admitted into evidence.  The trial court denied the mistrial
motion.

            Benton filed a motion for new trial, alleging a violation of Rule of Appellate Procedure
21.3(f) because the jury had received and viewed evidence that had not been
admitted.  At a hearing on the motion, the presiding juror testified that some
of the jurors (about one-third of them) used the camera to view photos on the
chip.  The photos that he saw were of a parade and of home life (backyard-type
events, including children who Benton said in the punishment phase were his
nephews), “nothing special.”  The State offered and the trial court admitted printouts
of the photos at the hearing, and the juror identified them as the photos that
he and some of the other jurors had viewed.  The lead prosecutor testified that
he was not aware that there were photos in the camera and that he had not
intended to present the photos as evidence at trial.  The trial court denied
the motion for new trial, noting that the photos were neither prejudicial nor
obscene and that no disputed issue was addressed in any photo.

            Rule
21.3(f) provides that a trial court must grant a new trial if, “after retiring
to deliberate, the jury has received other evidence.”  Tex. R. App. P. 21.3(f).  A two-prong test must be met for a
defendant to get a new trial under this rule:  (1) evidence must have been
received by the jury, and (2) the evidence must be detrimental or adverse to
the defendant.  Bustamante v. State, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003).  Although the prosecutor stated that he did not intend to offer the
photos in the camera as evidence, the State argues that the photos were not
“outside” or “other” evidence because the camera was admitted without objection
or limitation.  We need not decide whether the photos were “other” evidence
“received” by the jury.  In concluding that the photos were “innocuous at best”
and were not prejudicial to Benton, on the second prong the trial court did not
abuse its discretion.  We overrule Benton’s first issue.




             Having
overruled Benton’s three issues, we affirm the trial court’s judgment.

 

 

BILL VANCE

Justice

 

Before Chief Justice Gray,

Justice Vance,
and

Justice Reyna

Affirmed

Opinion delivered and filed September
12, 2007

Publish

[CRPM]








 






thrusting his lower body against hers.  She
could feel his penis.  When she asked him what he was doing, he responded,
“Well, somebody’s got to teach you.”  When she told him to stop, he told her to
at least give him a kiss, and he tried to put his tongue in her mouth.  She
screamed, and her mother came in the bedroom, while Villanueva went in the
bathroom.  A.H. told her mother what had happened, and her mother said she
would talk to him.

            D.H. said she was sleeping
when she heard A.H. scream.  She awoke and saw Villanueva and A.H. in the room
but nothing else.  She heard her mother getting out of bed and come to the
room, and Villanueva went in the bathroom.  A couple of months later, A.H. and
D.H. went to stay with their grandparents for the summer, and A.H. made an
outcry to her grandmother about Villanueva’s alleged sexual assault.  Her
grandmother contacted CPS and the police and made a written statement, and then
A.H. did a videotaped interview with CPS.

A person commits the offense of
indecency with a child “if, with a child younger than 17 years and not the
person’s spouse, whether the child is of the same or opposite sex, the person .
. . engages in sexual contact with the child or causes the child to engage in
sexual contact.”  Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 2003).  In section 21.11, “sexual contact”
means the following acts, if committed with the intent to arouse or gratify the
sexual desire of any person:  “(2) any touching of any part of the body of a
child, including touching through clothing, with the anus, breast, or any part
of the genitals of a person. . . .”  Id. § 21.11(c)(2).  An offense under subsection (a)(1) is a
second-degree felony. Id. §
21.11(d).

            A.H. was younger than 17
and was not Villanueva’s spouse.  In addition to the above, she also testified
that Villanueva was moving the front of his lower body against her and his
penis felt like it was “poking [her] butt.”  A complainant’s testimony alone is
sufficient to support a conviction for indecency with a child.  Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon 2005) (requirement that victim inform another person within one year
does not apply to person under 17 at time of offense); see Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. 1978).

The requisite specific intent to arouse
or gratify can be inferred from the defendant’s conduct and remarks and all the
surrounding circumstances.  Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App.
[Panel Op.] 1981); Gottlich v. State, 822 S.W.2d 734, 741 (Tex. App.—Fort Worth 1992, pet. ref’d), abrogated on other grounds by Arevalo v. State,
943 S.W.2d 887, 888-90 (Tex. Crim. App. 1997).  An oral expression of intent is
not required; the conduct itself is sufficient to infer intent.  C.F. v.
State, 897 S.W.2d 464, 472 (Tex. App.—El Paso 1995, no writ).  Thus, the
trial court could infer from Villanueva’s conduct that it was done with the
intent to arouse and gratify his sexual desire.  See Gottlich, 822
S.W.2d at 741; Fetterholf v. State, 782 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1989, pet. ref’d).

The indictment alleged that the offense
occurred on or about June 12, 2004, but it was clear that it actually occurred
in April 2004.  The indictment’s “on or about” language allows the State to
prove a date other than one alleged in the indictment as long as the date is
anterior to the presentment of the indictment and within the statutory
limitation period.  See Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); Shea v. State, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet.
ref’d).

            A.H. admitted on
cross-examination that she had not mentioned feeling Villanueva’s penis when
she first told her mother and grandmother about the incident.  A.H. and D.H.
both testified that they did not like how Villanueva punished them, and there
was evidence that A.H. did not seem upset the following day.  A.H.’s mother,
who was still married to and living with Villanueva at the time of trial, said
that she saw him lying on the floor behind A.H. and that A.H. told her that
Villanueva was “being nasty.”  She asked A.H. to explain, and A.H. said that he
had tried to kiss her; the mother did not recall A.H. saying anything about
Villanueva rubbing her behind.  A.H.’s grandmother testified over objection as
the outcry witness.  Her testimony was consistent with A.H.’s, but her written
statement did not mention Villanueva’s penis.

            We agree with counsel that sufficiency
of the evidence is not an issue that might arguably support an appeal.

Extraneous Offenses

            An
extraneous offense is any act of misconduct, whether resulting in prosecution
or not, that is not shown in the charging papers and shown to have been
committed by the accused.  Rankin v. State, 953 S.W.2d 740, 741 (Tex.
Crim. App. 1996); Shea, 167 S.W.3d at 104.  Evidence of multiple
occurrences of the defendant’s same conduct against the same victim is
admissible, and such evidence does not amount to evidence of extraneous
offenses if it can be included in the indictment.  See Worley v. State,
870 S.W.2d 620, 621-23 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).

Trial counsel objected to A.H.’s and
D.H.’s testimony about other instances of Villanueva touching their breasts,
alleging that those instances were extraneous offenses for which notice had not
been given.  These acts were identical to the
charges in the other two cases that were tried together and thus were not
extraneous offenses.  Based on the record, we agree with counsel that the
trial court’s admission of these acts is not an issue that might arguably
support an appeal.

Outcry Witness

The trial court overruled counsel’s objection to the State’s
calling the grandmother as an outcry witness.  The outcry-witness statute
applies in a prosecution of an offense against a child 12 years of age or
younger and only to statements that describe the alleged offense that (1) were
made by the child complainant and (2) were made to the first person, 18 years
of age or older, other than the defendant, to whom the child made a statement
about the offense.  Tex. Code Crim.
Proc. Ann. art. 38.072 (Vernon 2005).  The Court of Criminal Appeals has
construed this to mean the first adult “to whom the child makes a statement
that in some discernible manner describes the alleged offense.  [This]
statement must be more than words which give a general allusion that something
in the area of child abuse was going on.”  Garcia v. State, 792 S.W.2d
88, 91 (Tex. Crim. App. 1990).  “[A] trial court has broad discretion in
determining” the proper outcry witness.  Id. at 92.  Thus, we review a
trial court’s ruling for an abuse of discretion.  Id. at 91-92.

The proper outcry witness is the adult to whom the complainant
first tells “how, when, and where” she was assaulted.  See Hanson v. State,
180 S.W.3d 726, 730 (Tex. App.—Waco 2005, no pet.); Sims v. State, 12
S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref’d).  Here, while it is clear
that A.H. first told her mother about the incident, her mother denied that A.H.
made an outcry that Villanueva had rubbed his penis against her.  The trial
court could have concluded that A.H. did not tell her mother the “how”—all of
the details—of Villanueva’s conduct.  The trial court also noted that the
mother was aligned with Villanueva at trial.

The potentially arguable issue identified by counsel is whether the
trial court abused its discretion in determining that the grandmother was the
proper outcry witness.  See Hanson, 180 S.W.3d at 730; Smith v.
State, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref’d)
(complainant told mother and doctor that defendant “had been performing oral
sex on him” then later provided details to another adult); Castelan v.
State, 54 S.W.3d 469, 475-76 (Tex. App.—Corpus Christi 2001, no pet.)
(complainant told grandmother that defendant had “put his thing in through the
back” then later provided details to counselor); Sims, 12 S.W.3d at 500
(complainant told mother that defendant “had touched her private parts,” then
later provided details to counselor).  However, we agree with counsel that the trial court’s finding that the
grandmother was the outcry witness is not an issue that might arguably support
an appeal.

Ineffective Assistance of Counsel

The standard in Strickland v.
Washington applies to a claim of ineffective assistance of counsel.  Strickland
v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To prevail, a defendant must first
show that his counsel’s performance was deficient.  Id. at 687, 104
S.Ct. at 2064; see Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim.
App. 2002).  Then it must be shown that this deficient performance prejudiced the
defense.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

            Appellate review of defense
counsel’s representation is highly deferential and presumes that counsel’s actions
fell within the wide range of reasonable and professional assistance.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical or strategic decision-making as to
overcome the presumption that counsel’s conduct was reasonable and
professional.  See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Mitchell, 68 S.W.3d at 642.  Rarely will the trial record
contain sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation:  “[i]n the majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.”  Thompson v. State, 9 S.W.3d 808, 813-14
(Tex. Crim. App. 1999); see also Mitchell, 68 S.W.3d at 642 (“The
reasonableness of counsel’s choices often involves facts that do not appear in
the appellate record.  A petition for writ of habeas corpus usually is the
appropriate vehicle to investigate ineffective-assistance claims.”).

            In the absence of evidence
of trial counsel’s reason for the challenged conduct, we assume a strategic
reason for trial counsel’s conduct, if one can be imagined.  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (“an appellate court
‘commonly will assume a strategic motivation if any can possibly be imagined,’
and will not conclude the challenged conduct constituted deficient performance
unless the conduct was so outrageous that no competent attorney would have
engaged in it”) (quoting 3 W. Lafave, et
al., Criminal Procedure § 11.10(c) (2d ed. 1999), and citing Thompson,
9 S.W.3d at 814).  But, if nothing in the record reveals trial counsel’s
reason, it is improper for us to speculate on it.  See Thompson, 9
S.W.3d at 814.

As counsel notes in the Anders brief, Villanueva’s trial
counsel filed and obtained rulings on appropriate pretrial motions.  He was
diligent in protecting the record for appeal, was thorough in examining
witnesses, and obtained an acquittal in the other two cases.  The range of
punishment for a second-degree felony is two to twenty years in prison.  In the
punishment phase the State proved a prior sexual offense, which trial counsel
addressed.  He advanced Villanueva’s arguments and asked for deferred
adjudication, but the trial court imposed a ten-year sentence.

We agree with counsel that, based on the record, an ineffective
assistance claim is not
an issue that might arguably support an appeal.

Conclusion

We have also conducted an independent
review of the record to determine whether there are any other arguable grounds
for appeal.  See Stafford, 813 S.W.2d at 511.  We determine
there are none.  Accordingly, we affirm the judgment.

Counsel must advise Villanueva of our
decision and of his right to file a pro se petition for discretionary
review.  See Sowels, 45 S.W.3d at 694; see also Meza v. State,
---S.W.3d ---, --- n.23, 2006 WL 2686519, at *3 n.23 (Tex. Crim. App. Sept. 20,
2006);
Ex parte Owens, --- S.W.3d ---, ---, 2006
WL 2619989, at *1 (Tex. Crim. App. Sept. 13, 2006).  We grant counsel’s motion to withdraw, effective upon
counsel’s advising Villanueva of 
our decision and of his right to file a pro se petition for discretionary
review.  See Meza, ---S.W.3d at ---, 2006 WL 2686519, at *3.

 

 

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring)

Affirmed;
motion to withdraw granted

Opinion
delivered and filed October 18, 2006

Publish

[CR25]









[1]               We have
previously found that even an appeal following a contested trial might present
no issues of arguable merit.  See Taulung v. State, 979 S.W.2d 854, 858
(Tex. App.—Waco 1998, no pet.) (bench trial of sexual assault case).





[2]               A pro se response that
raises and briefs potentially arguable issues also could warrant a detailed analysis.

 





[3]               We will let others
assess the concurring opinion’s characterization of this opinion as
“mind-numbing.”