Massimo v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-318-CR

AMANDA MARIE MASSIMO APPELLANT

V.

THE STATE OF TEXAS STATE 

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

OPINION

------------

I. Introduction

In six points, appellant Amanda Marie Massimo challenges her misdemeanor conviction for harassment by electronic communication.  In points one and two, Massimo complains the trial court erred by allowing the introduction of certain evidence and failing to grant a continuance after ruling the evidence could be introduced.  In points three and four, Massimo’s complaints center on the admission of certain e-mails, State’s Exhibits 1 and 6.  Finally, in points five and six, Massimo complains that the evidence was not legally or factually sufficient to support the jury’s guilty verdict.  We will affirm.

II. Factual and Procedural Background

Renee Kreshak was a friend of Amanda Massimo and Melissa Taylor in  Lewisville, Texas, having known Taylor since high school and Massimo about a year and a half to two years.  Massimo and Taylor had a disagreement, leading to a physical altercation and a police complaint being filed by Taylor. Shortly thereafter, beginning October 22, 2002, Taylor began receiving threatening e-mails, which she believed were sent by Massimo, the first of which was identified at trial as State’s Exhibit 1.
(footnote: 1)  
At one point in her testimony, Taylor did not recall Massimo’s e-mail address although she recalled it later and, as she never saw her send the e-mail,  could not say for certain who was sending the threatening e-mail.
  Taylor was fearful and felt threatened, and believed the e-mail came from Massimo because of the content.  The language used was consistent with Massimo’s and the account address, babycol20@yahoo.com
, was recognized by Taylor as Massimo’s, 
although Taylor stated that Danielle Jones, and Kreshak besides Massimo, knew about the contents of the e-mail. 
 Kreshak had previously witnessed Massimo sending Taylor a threatening e-mail which in part stated that “I will kill you and your two kids,” but it was not State’s Exhibit 1.
(footnote: 2)  The threatening e-mail witnessed by Kreshak was sent to rodeosweetheart12002@yahoo.com
 which was known by Kreshak to be Taylor’s e-mail address.  When Kreshak subsequently went to Taylor’s home, she was told by Taylor that Massimo had been e-mailing her and threatening her and her children.  On October 29, 2002, Taylor reported the threatening e-mails to police.

The next day, the Flower Mound Police Department assigned the e-mail complaint to Detective Sparby, who twice attempted to contact Massimo by phone on November 11 and left a business card on the door of her home the following day.  Sparby received no immediate response to her phone calls and business card until she e-mailed Massimo at babycol20@yahoo.com,
 the address provided to her by Taylor.
(footnote: 3)  The following series of e-mails, comprising State’s Exhibit 6, were exchanged through November 16, 2002:

Amanda,

I am a detective with the Town of Flower Mound Police Department and I need to speak with you.  Please contact me at the phone number below.

Thanks

Detective Misty Sparby

Crimes Against Persons

Flower Mound Police Department

972.874.3348 Direct Line

972.874.3362 Fax

[At 3:20 p.m. that same day, a reply was received from babycol20@yahoo.com:]

Dear Misty,

Can you e-mail me back and tell me why you want to speak with me.

Thanks

Amanda

[Detective Sparby responded:]

It is in reference to harassment.

Thanks

[On November 14, Detective Sparby was sent the following:]

First off i did not harass nobody, melissa taylor broke into my e-mail and sent it herself, and used other people to do it also, she knew what my password was in the first place, i had to change my whole account because it was tampered.  second i do not need melissa taylor’s mom calling my house and calling me a bitch, etc.  And my mom is about to file false accusation charges with the state on her.

[Detective Sparby subsequently wrote:]

Amanda,

This issue is not going away, I need you to come and talk with me.  I have an open investigation, adn [sic] this is not going to be cleared up by us e-mailing each other.  We can go about this one of two ways.  I can either obtain a warrant for your arrest on the information I have right now, or you can come in and explain to me your side of the situation.  At the current time I do not have proof that she broke into your email, and can not get that proof without your assistance.

Call me.

Detective Sparby

972.874.3348

[The following reply was sent on November 16 at 4:52 p.m.:]

ok i am going to say a couple things first you do not have permission to e-mail me, and you are trespassing on personal property without a warrant, i do not live in lewisville no more so i do not know how to go down and contact you, another thing is this, i will be contacting the state if you keep on harrassing [sic] me and i will speak with your boss kenneth brooker chief [sic] of police.  another thing also the district attorney that my mom knows really well told me you have no proof i am personally sending melissa e-mails, and me personally i am sorry but i am not going to waste my precious time for somebody that is not worth my time.

Although Sparby had no certainty as to the authenticity of the e-mail messages between herself and the correspondent at baby20col@yahoo.com, and testified that other people besides Massimo may have had knowledge of the contents of those e-mails
, only Massimo went to the police station and complained to Corporal Lucio and Lieutenant Mitchell that Sparby was harassing her 
after the
 final e-mail alluding to the author filing a harassment complaint with the police.  In early December 2002, Sparby learned from Kreshak that she had witnessed Massimo sending Taylor a threatening e-mail the previous October from another Yahoo account address.  At some point, Sparby also received information from Kreshak that Massimo had spoken to someone named Benny Verver (phonetic spelling) about having Sparby killed.  Massimo was arrested in Lewisville on January 25, 2003 and charged with two counts of harassment by electronic communication.

Massimo pled not guilty on July 28, 2003 and was found guilty by a jury to one count of harassment by electronic communication, a violation of section 42.07(a)(2) of the Texas Penal Code.  
See 
Tex. Penal Code
 
Ann
. § 42.07(a)(2) (Vernon 2003).  The jury assessed punishment at 180 days’ confinement in the Denton County Jail and a $1000 fine with a recommendation that Massimo be placed on community supervision, which sentence was imposed the same day.

III. Massimo’s Motions to Dismiss and for Continuance

On July 11, 2003, Massimo filed her Motion for Discovery and Inspection of Evidence, requesting copies of e-mails which the prosecution alleged were sent by Massimo to Taylor.  At the pretrial hearing on July 25, 2003, the trial court granted Massimo’s request and told the prosecution to “[g]o ahead and make him a copy of those and get them to him by the end of th[e] day.”  The following Monday, July 28, Massimo’s counsel complained that he had not gotten the e-mails in question until that morning, the day of trial, and asserted a motion to dismiss the case for failure to provide him the e-mails.  The following exchange took place in connection with the dismissal motion: 

THE COURT: So you presented yourself to the DA’s office before five o’clock on Friday to pick up those documents?

[DEFENSE COUNSEL]: My understanding, they were supposed to be faxed to me.

THE COURT: No, sir, you were supposed to get those documents yourself.  No one ever mentioned anything about anything being faxed to you.

In points one and two, Massimo complains that the trial court erred in overruling her Motion to Dismiss and to Prevent the Prosecution from Introducing Evidence that the State Failed to Disclose Pursuant to a Pretrial Discovery Order (the e-mails provided to him on the day of trial), and further erred by not granting a continuance in light of the late receipt of the e-mail evidence.  It is axiomatic that a court may prevent the introduction of State’s evidence if it has been withheld though subject to disclosure under a discovery order, or in violation of the discovery order.  
Lindley v. State
, 635 S.W.2d 541, 543 (Tex. Crim. App. 1982); 
Hollowell v. State
, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978).  However, such is not the case here.  It is apparent from the verbal exchange between the trial judge and defense counsel that the judge expected defense counsel to pick up the documents that he wanted, and had known about it for some time, but counsel failed to do so.  This is far from unlawfully withholding evidence and violating a discovery order and does not warrant dismissal or suppression of the evidence.  Further, the only reason articulated by defense counsel to the court as to his need for the e-mails was to hire an expert to determine their source.  An expert can be retained without the contents of the e-mails, and as Massimo had been represented by counsel since April 28, 2003, and yet waited until seventeen days before trial to file her Motion for Discovery and Inspection of Evidence, the failure to obtain an expert or obtain the e-mails until the eve of trial can hardly be the fault of the State.  Therefore, Massimo has shown no harm in obtaining the e-mails on the Monday of trial instead of the Friday before trial, and was at least partially, if not totally, responsible for their last-minute production.

Further, had there been a violation of a trial court’s pre-trial discovery order which caused surprise to Massimo, the proper procedure at that point would have been to request a continuance of the trial.  
Duff-Smith v. State
, 685 S.W.2d 26, 32 (Tex. Crim. App.), 
cert. denied,
 474 U.S. 865 (1985).  Moreover, the motion for continuance must be written and sworn.  
Tex. Code Crim. Proc. Ann.
 arts. 29.03, 29.08 (Vernon 1989)
.  If a proper motion for continuance to obtain evidence is denied, a motion for new trial is required, which by affidavit or other evidence shows the nature and materiality of the missing evidence.  
White v. State
, 657 S.W.2d 877, 881 (Tex. App.—Fort Worth 1983, no pet.).  No written continuance motion was filed, nor was even a formal oral motion presented—only a complaint by Massimo’s counsel that he needed an expert and did not have one, which was brought to the court’s attention “30 minutes after the case was set for trial today.”  The Court 
construed
 this as a request for a continuance and denied it.  As procedural requirements for a continuance were not followed in this case, nor has harm been shown, and bearing in mind that the review of a ruling on a motion for continuance is under the abuse of discretion standard
,
(footnote: 4) we cannot say that the trial court erred in failing to dismiss the case, suppress the e-mails, or abused its discretion in denying what the trial court construed as an oral motion for continuance.  Massimo’s points one and two are overruled.  

IV. Exhibits 1 and 6

Massimo next assigns error in her points three and four, complaining that the trial court erred in admitting State’s Exhibits 1 and 6 because they were not properly authenticated and additionally because Exhibit 6 was hearsay.  Massimo objected to the introduction of Exhibit 1 on the grounds that it was not properly authenticated and was not linked to her.  We review the trial court’s decision to admit evidence under an abuse of discretion standard.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  We will not reverse a trial court’s ruling unless that ruling falls outside the zone of reasonable disagreement. 
 Id
.

Texas Rule of Evidence 901(a) states that “[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims,” while subsection (b) of the rule illustrates examples of authentication or identification meeting the requirements of the rule, including “[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.” 
Tex. R. Evid.
 901(a), (b)(4).  There is a paucity of case law applying the evidentiary rule to e-mails, but one federal court, applying identical Federal Rule of Evidence 901(a) and (b)(4), found that a district court had not abused its discretion in admitting e-mail evidence by applying Federal Rule 901(b)(4), utilizing  characteristic evidence such as:  (1) consistency with the e-mail address on another e-mail sent by the defendant; (2) the author’s awareness through the e-mail of the details of defendant’s conduct; (3) the e-mail’s inclusion of similar requests that the defendant had made by phone during the time period; and (4) the e-mail’s reference to the author by the defendant’s nickname.  
United States v. Siddiqui
, 235 F.3d 1318, 1322-23 (11
th
 Cir. 2000), 
cert. denied
, 533 U.S. 946 (2001).
(footnote: 5)
 Distinctive internal characteristics have also served to authenticate documents in other contexts.  For example, typewritten documents found in a briefcase belonging to an alleged conspirator of a murder defendant were authenticated by their contents, which included specific details about the alarm code and gate code to the victim’s house, an outline of the murder plot, and post-crime events and actions that tended to connect the defendant with the murder.  
See Angleton v. State
, 955 S.W.2d 655, 658 (Tex. App.—Houston [14
th
 Dist.] 1997), 
rev’d on other grounds
, 971 S.W.2d 65 (Tex. 1998).  Documents found in trash discarded outside a drug defendant’s home were also authenticated by characteristic evidence, such as the defendant’s address found on the documents.  
See United States v. Baker
, 855 F.2d 1353, 1359 (8
th
 Cir. 1988), 
cert. denied
, 490 U.S. 1069 (1989).

A review of the characteristic evidence concerning Massimo’s purported Exhibit 1 e-mail yields the following:  (1) Exhibit 1 was sent to Taylor’s e-mail address shortly after she and Massimo had a physical altercation, and the e-mail referenced that altercation; (2) Taylor recognized Massimo’s e-mail account address since she had received e-mails from Massimo previously from this e-mail address; (3) Taylor testified that Massimo usually used the e-mail account babycol20@yahoo.com
 and that both she and Massimo utilized Yahoo personal accounts; (4) Taylor testified that only Massimo and a few other people knew about things discussed in State’s Exhibit 1; (5) Taylor testified that the contents of the e-mails and the way the e-mails were written were the way in which Massimo would communicate; (6) Kreshak testified that she witnessed Massimo send a similar life-threatening e-mail to Taylor using the same vulgarities which appeared in State’s Exhibit 1, albeit from a different e-mail address; and (7) Massimo told Kreshak that she was sending the threatening e-mail because she and Taylor did not like each other, which attitude is also reflected in State’s Exhibit 1.  Based on all of the foregoing and reviewing the requirements of Rule 901 of the Texas Rules of Evidence, we cannot say that the trial court’s decision to admit State’s Exhibit 1 over a lack-of-authentication objection was so unreasonable as to constitute an abuse of discretion.

Likewise, the characteristic evidence concerning State’s Exhibit 6, purported e-mails sent from Massimo to Sparby, yields the following:  (1) the e-mails were signed ”Amanda,” Massimo’s given name, and were sent from an e-mail address Taylor recognized as belonging to Massimo, babycol20@yahoo.com;
 (2) the e-mails exchanged between Massimo and Sparby are consistent with Sparby’s testimony that Massimo was not responding to her efforts to talk to her and was uncooperative; (3) the author of the e-mails knew the subject of the investigation, harassing e-mails, before Sparby revealed that to her; and (4) the November 16 e-mail threatened to report Sparby for harassment, and was sent the same day that Massimo appeared at the police station in person to file harassment charges against Sparby.  While Massimo asserted defensively that someone was impersonating her and sending the e-mails on her behalf, she introduced no evidence to support this assertion, and Taylor specifically denied such action.  Again, in reviewing the admission of evidence under Texas Rules of Evidence 901, and under the abuse of discretion standard, we cannot say that the trial court abused its discretion in admitting State’s Exhibit 6 over a lack-of-authentication objection.

Massimo further argues that State’s Exhibit 6 is hearsay and is not a statement against interest
,
(footnote: 6) because there is no exposure of the defendant to criminal liability and there is no showing or trustworthiness of the statements, citing 
Rose v. State
,  No. 2-02-272-CR, 2003 WL 22725583, at *3 (Tex. App.—Fort Worth Nov. 20, 2003, no pet.) (not designated for publication).

According to Texas Rule of Evidence 801, a statement is not hearsay if it is a written verbal expression offered against the party and is the party’s own statement in their individual capacity.  
Tex. R. Evid.
 801(a), (e)(2)(A).  State’s Exhibit 6 contains written verbal expressions for which there was evidence that the statements were made by Massimo as previously discussed, who was a party, and was offered against Massimo in the sense that Massimo would not admit she sent State’s Exhibits 1 and 6.  It verified her e-mail address, contained her language pattern, and demonstrated she knew about the harassing e-mails to Taylor before being told by Sparby who had only stated it was about “harassment”, the subject of her investigation.  Further, the e-mail threats subject to prosecution were not contained in State’s Exhibit 6, but in State’s Exhibit 1.  Therefore, the admission of State’s Exhibit 6, if erroneous, was harmless.  Massimo’s points three and four are overruled.

V. Legal and Factual Sufficiency

Massimo’s final two points argue that the evidence is legally and factually insufficient to support the jury’s verdict.  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at *7.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 
 In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at *4; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
2004 WL 840786, at *4.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at *7, 9.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

In 
a single sentence not connected to any point on appeal, Massimo alleges that “[t]he prosecution did not prove that the offense alleged in the first paragraph of the information occurred in Denton County, Texas.”  We will construe this to be a complaint connected to the factual and legal insufficiency points.  While this compliant contains neither argument nor authority, if it is a complaint concerning venue, it was not addressed at the trial court and has been waived.  
Mosley v. State
, 643 S.W.2d 212, 215-16 (Tex. App.—Fort Worth 1982, no pet.).  Further, the record reveals that Taylor received the e-mail in Denton County.  
See
 
Haigood v. State
, 814 S.W.2d 262, 263 (Tex. App.—Austin 1991, pet. ref’d).  

Having set forth and reviewed the relevant evidence in this case as it touches on Massimo’s legal and factual insufficiency complaints, we cannot say the evidence is either legally or factually insufficient, and overrule Massimo’s points five and six.

VI. Conclusion

Having overruled Massimo’s points on appeal, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

PUBLISH

DELIVERED: August 5, 2004

FOOTNOTES
1:
Exhibit 1 reads:

listen bitch if you have something to say about me you better to say it to my face i am tried of everybody saying you are saying shit behind my back well listen up if i hear it again i will kill or have you killed, so watch your back bitch, believe me i might have taken it easy on whooping your dam ass at danielle’s but all i got to say is the next time i see you i will kill you so you better watch your fuckin mouth slut.  second of all you know how you are calling me a slut behind my back well all i can say is look in the mirror bitch because unlike you i do not genital herpes you sluty ass whore.

2:
At trial  Kreshak could not identify the e-mail header on State’s Exhibit 1, “babycol20@yahoo.com,”
 as Massimo’s.  She recalled that the threatening e-mail she witnessed had an account under the name “amstar and something at [Y]ahoo.com,”
 
although Detective Misty Sparby never located such an e-mail account.

3:
Sparby testified she believed she spoke to Massimo once on the phone at some point. 

4:
Vasques v. State
, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002)
.

5:
See also 
Kupper v. State
, 05-03-00486-CR, 2004 WL 60768, at *3 (Tex. App.—Dallas Jan. 14, 2004, no pet.) (not designated for publication)
 (holding that admission of e-mails was not an abuse of discretion where the e-mails were recovered from defendant’s work computer, contained the names of the defendant and the victim and the victim’s e-mail address, and discussed similar fact scenarios).

6:
See
 
Tex. R. Evid.
 803(24)
.